1
2
3
4
5
6
7
8
9
10              **IN THE UNITED STATES DISTRICT COURT**

11              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13    JESSE VERMILLION,                          CASE NO. CV F 08-1069 LJO SMS

14                  Plaintiff,              _____**ORDER ON DEFENDANT'S MOTIONS TO**
                                            **DISMISS AND TO STRIKE**
15         vs.                              (Docs. 10, 11.)

16    CORRECTIONS CORPORATION
      OF AMERICA,
17
                    Defendant.
18    _____/

19                              **INTRODCUTION**

20         Defendant Corrections Corporation of America ("CCA") seeks to dismiss plaintiff Jesse

21    Vermillion's ("Mr. Vermillion's") California employment claims and to strike his punitive damages

22    claims in the absence of sufficient allegations of facts and elements of the claims.  Mr. Vermillion

23    responds that his complaint meets federal pleading standards and alleges sufficient facts to satisfy

24    elements of his claims.  This Court considered CCA's F.R.Civ.P. 12(b) and F.R.Civ.P. 12(f) motions

25    on the record and VACATES the September 8, 2008 hearing, pursuant to Local Rule 78-230(h).  For

26    the reasons discussed below, this Court DENIES dismissal of Mr. Vermillion's wrongful termination

27    in violation of public policy cause of action and DISMISSES with leave to amend Mr. Vermillion's

28    other causes of action and punitive damages claims.

                                          1

1

## BACKGROUND[1]

2

### Mr. Vermillion's Foot Condition And Workers' Compensation Claim

3       Mr. Vermillion was a seven-year CCA employee and worked as a prison guard at the California

4   City Corrections Center.[2]  In March 2007, an inmate attacked Mr. Vermillion to injure Mr. Vermillion's

5   elbow, back and shoulder.  Mr. Vermillion claims that after he filed a workers' compensation claim,

6   CCA branded him "a trouble maker and legal threat to the company."

7       In June 2007, Mr. Vermillion began to suffer extreme foot pain from constant standing on the

8   job.  Mr. Vermillion was unable to stand for more than a few minutes and used a chair when required

9   to stand all day.  Captain Clark[3] refused to allow Mr. Vermillion to sit and to assign Mr. Vermillion to

10  shifts with no standing.

11      Mr. Vermillion informed Captain Clark that Mr. Vermillion needed to file a workers'

12  compensation claim if Captain Clark "refused to reasonably accommodate his foot condition."  After

13  Captain Clark told Mr. Vermillion that Mr. Vermillion would need to visit Mr. Vermillion's personal

14  physician, Captain Clark allowed Mr. Vermillion to see a workers' compensation physician who placed

15  Mr. Vermillion on light duty.  CCA and Captain Clark continued to require Mr. Vermillion to stand "all

16  day" and assigned Mr. Vermillion to shifts that required standing.

17      Captain Clark and the Warden[4] began to make "derogatory comments" about Mr. Vermillion's

18  foot condition to insinuate that it was caused by his excessive weight.  Mr. Vermillion underwent an

19  August 6, 2007 gastric bypass, lost 80 pounds and "missed some work."

20

### Mr. Vermillion's Termination

21      On September 17, 2007, "shortly after" Mr. Vermillion returned from his gastric bypass, CCA

22  terminated Mr. Vermillion's employment on grounds that on March 23, 2007, he had "used excessive

23  ————————————————

24      [1]      The factual recitation is derived generally from Mr. Vermillion's original complaint ("complaint"), the
    subject of CCA's challenges.

25

26      [2]      CCA, a private corporation, apparently contracted to provide corrections officer services for the California
    City Corrections Center.

27      [3]      The complaint identifies an apparent CCA supervisor as merely "Captain Clark."

28      [4]      The complaint identifies the apparent warden of the California City Corrections Center as merely "Warden."

2

1   force on an inmate and filed a false report regarding the incident."  Mr. Vermillion attributes the inmate

2   to making "a false charge of excessive force" after telling Mr. Vermillion that the inmate "was going

3   to get him in trouble."

### Mr. Vermillion's Claims

5       Mr. Vermillion claims that CCA used the March 23, 2007 inmate incident as a "guise" to

6   terminate Mr. Vermillion "in retaliation for filing a worker' compensation claim and because he was

7   disabled."   The complaint alleges tort termination cause of action and three causes of action for

8   violations of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900,

9   et seq.  More specifically, the complaint alleges:

10      1.   A (first) cause of action for wrongful termination in violation of public policy in that

11           CCA terminated Mr. Vermillion "in retaliation for exercising rights to see a workers'

12           compensation doctor";

13      2.   A (second) cause of action for failure to reasonably accommodate disability in that CCA

14           refused Mr. Vermillion's request for shifts without excessive standing and to allow him

15           to sit during excessive standing shifts;

16      3.   A (third) cause of action for failure to engage in interactive process in that CCA fully

17           knew of Mr. Vermillion's disability and refused "to engage in a timely, good faith

18           interactive process" required by California Government Code section 12940(n); and

19      4.   A (fourth) disability discrimination cause of action that CCA discriminated against Mr.

20           Vermillion "on the basis of his disability by terminating him because he suffered from

21           his foot condition."

22      The complaint alleges Mr. Vermillion has suffered lost wages, humiliation and emotional

23   distress.  Each cause of action alleges that CCA's conduct "was fraudulent, oppressive, malicious and

24   despicable" to entitle Mr. Vermillion to punitive damages.

### CCA's MOTION TO DISMISS

### F.R.Civ.P. 12(b)(6) Standards

27      CCA seeks F.R.Civ.P. 12(b)(6) dismissal of the complaint's four causes of action in the absence

28   of supporting facts and elements – a challenge which Mr. Vermillion disputes.  A F.R.Civ.P. 12(b)(6)

3

1   motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a

2   federal court reviews the sufficiency of a complaint, before the reception of any evidence either by

3   affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will

4   ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer*

5   *v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d

6   246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a

7   cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

8   *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard,*

9   *Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove

10  no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S.

11  41, 45-46, 78 S.Ct. 99, 101-102 (1957).

12      In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most

13  favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

14  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

15  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal

16  conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

17  the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th

18  Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines

19  that the pleading could not possibly be cured by allegation of other facts."  *Cook, Perkiss and Liehe, Inc.*

20  *v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a

21  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

22  provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

23  formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127

24  S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  With these standards in mind, this Court

25  addresses CCA's challenges to Mr. Vermillion's four causes of action.

26                    **Wrongful Termination In Violation Of Public Policy**

27      The complaint's (first) cause of action for wrongful termination in violation of public policy

28  alleges that termination to retaliate for exercise of rights under workers' compensation statutes "violates

4

public policy." CCA characterizes the first cause of action to allege termination in retaliation for filing a workers' compensation claim to violate California Labor Code section 132a ("section 132a"). CCA argues that such claim is preempted by the California Workers' Compensation Act and must be heard by the Workers' Compensation Appeals Board ("WCAB"). Mr. Vermillion reponds that section 132a is not the exclusive remedy for wrongful discharge to retaliate for filing a workers' compensation action in that an employee may elect to proceed before the WCAB or to pursue a civil tort action.

The first cause of action appears to allege a claim under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172, 164 Cal.Rptr. 839, 842 (1980) ("*Tameny*") ("an employer's traditional authority to discharge an at-will employee may be limited by statute . . . or by considerations of public policy"). There can be no right to terminate for an unlawful reason or purpose that contravenes fundamental public policy. *Silo v. CHW Med. Found.*, 27 Cal.4th 1097, 1104, 119 Cal.Rptr.2d 698, 703 (2002). "It is settled that an employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort action." *Barton v. New United Motor Manufacturing, Inc.*, 43 Cal.App.4th 1200, 1205, 51 Cal.Rptr.2d 328 (1996); *Cabesuela v. Browning-Ferris Industries of Cal., Inc.*, 68 Cal.App.4th 101, 107, 80 Cal.Rptr.2d 60 (1998). The plaintiff's remedy is a common law tort action: "A wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief." *Tameny*, 27 Cal.3d at 174-175, 164 Cal.Rptr. at 843.

The elements for such a tort claim are:

1.      An employer-employee relationship;

2.      Termination or other adverse employment action;

3.      The termination or adverse action was a violation of public policy;

4.      Termination or adverse action was a legal cause of plaintiff's damage; and

5.      The nature and extent of plaintiff's damages.

*See Holmes v. General Dynamics Corp.*, 17 Cal.App.4th 1418, 1426 n. 8, 22 Cal.Rptr.2d 172, 177, n. 8 (1993).

Violations of FEHA and policies against race, sex, age and disability discrimination support *Tameny* claims. *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1160-1161, 77 Cal.Rptr.2d 445,

455-456 (1998) (disability discrimination); *Stevenson v. Superior Court*, 16 Cal.4th 880, 896, 66

Cal.Rptr.2d 888, 897 (1997) (age discrimination).

Section 132a declares as "policy of this state that there should not be discrimination against

workers who are injured in the course and scope of their employment":

> (1) Any employer who **discharges**, or threatens to discharge, or in any manner discriminates against any employee **because he or she has filed or made known his or her intention to file a claim for compensation** with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.  (Bold added.)

CCA points out that section 132a determinations rest with the WCAP:

> Proceedings for increased compensation as provided in paragraph (1), or for reinstatement and reimbursement for lost wages and work benefits, are to be instituted by filing an appropriate petition with the appeals board . . . .The appeals board is vested with **full power, authority, and jurisdiction** to try and determine finally all matters specified in this section subject only to judicial review . . .  (Bold added.)

Section 132a provides remedies for employees whose employers have retaliated against them for

filing a workers' compensation claim.  *Accardi v. Superior Court*, 17 Cal.App.4th 341, 347, 21

Cal.Rptr.2d 292 (1993).  Section 132a's intent is to deter employers from discriminating against injured

employees who assert their rights under the workers' compensation laws. *Judson Steel Corp v. Workers'*

*Comp. Appeals Bd.,* 22 Cal.3d 658, 668,150 Cal.Rptr. 250, 586 P.2d 564 (1978).  A claim under section

132a lies within the WCAB's exclusive jurisdiction.  *Portillo v. G.T. Price Products, Inc.,* 131

Cal.App.3d 285, 182 Cal.Rptr. 291(1982).

In *City of Moorpark*, 18 Cal.4th at 1155, 77 Cal.Rptr.2d 445, the California Supreme Court held

that Section 132a is not an exclusive remedy:

> But section 132a is quite different from other workers' compensation remedies. Most workers' compensation remedies compensate an employee for a medical injury. Section 132a, however, addresses a breach of an employee's civil rights and applies regardless of whether that breach causes a medical injury. Because of this distinction, we see no compelling reason to treat section 132a like other workers' compensation remedies.

> Moreover, the existence of a workers' compensation remedy does not by itself establish that the remedy is exclusive. Rather, the scope of workers' compensation exclusivity depends on the terms of the exclusive remedy provisions. Section 132a does

1    not itself contain an exclusive remedy clause, and, as explained below, the general
2    exclusive remedy provisions of the workers' compensation law expressly do not apply
     to section 132a.

3    The California Supreme Court further noted that "a section 132a violation, like sexual and racial

4    discrimination, falls outside the compensation bargain, and workers' compensation is not the exclusive

5    remedy." *City of Moorpark*, 18 Cal.4th at 1155, 77 Cal.Rptr.2d 445.  The California Supreme Court

6    added: "Labor Code section 5300 merely establishes the Workers' Compensation Appeals Board as the

7    exclusive forum for pursuing a section 132a claim; it does not establish that the section 132a claim is

8    the employee's exclusive remedy." *City of Moorpark*, 18 Cal.4th at 1156, 77 Cal.Rptr.2d 445.

9           The first cause of action alleges that termination was "in retaliation for exercising rights to see

10   a workers' compensation doctor." California workers' compensation laws allow workers an opportunity

11   to treat with a "workers' compensation" physician and do not limit workers to treatment to their personal

12   physician for work-related injury.  *See* Cal.Const. Art. 14, § 4.  CCA improperly seeks to transform the

13   first cause of action, a tort claim, into a section 132a claim.  Mr. Vermillion correctly notes that the first

14   cause of action alleges neither section 132a violations nor remedies.  The first cause of action is a

15   *Tameny* claim subject to neither section 132a nor WCAB exclusive jurisdiction.  Section 132a "does not

16   provide an exclusive remedy and does not preclude an employee from pursuing FEHA and common law

17   wrongful discharge remedies."  *City of Moorpark*, 18 Cal.4th at 1158, 77 Cal.Rptr.2d 445.  In its reply

18   papers, CCA acknowledges that "Section 132a does not provide the exclusive remedy for discrimination

19   based on a work-related disability."  The first cause of action is not subject to dismissal.

20                                    **Disability Discrimination**

21          The complaint's (fourth) disability discrimination cause of action alleges that CCA's

22   discrimination against Mr. Vermillion based on his foot problem violated FEHA.  FEHA declares "as

23   a public policy of this state that it is necessary to protect and safeguard the right and opportunity of all

24   persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . .

25   physical disability, mental disability, medical condition . . ."  Cal. Gov. Code, § 12920.  California

26   Government Code section 12940(a) provides it is unlawful: "For an employer, because of . . . physical

27   disability, mental disability, medical condition . . . to refuse to hire or employ the person . . . or to bar

28   or to discharge the person from employment . . . or to discriminate against the person in compensation

                                                    7

1    or in terms, conditions, or privileges of employment."

2         Elements of a prima facie case of disability discrimination are that the plaintiff:

3         1.      Suffers from a disability;

4         2.      Is otherwise qualified to perform his/her job; and

5         3.      Was subjected to adverse employment action because of the disability.

6    *Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 886, 58 Cal.Rptr.3d 729 (2007);

7    *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997); *see McDonnell Douglas*

8    *Corp. v. Green*, 411 U.S. 792, 802; 93 S.Ct. 1817 (1973);*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891

9    (9th Cir. 1994); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert. denied*,

10   484 U.S. 1047, 108 S.Ct. 785 (1988).

11        CCA focuses on the second "qualified" element and characterizes it as "qualified to perform the

12   essential functions of the job, with or without reasonable accommodations." *Bourgeois v. Fireplace*

13   *Manufacturers, Inc.*, 68 Cal.App.4th 1049, 1058, n. 11, 80 Cal.Rptr.2d 660 (1998).  CCA faults the

14   (fourth) disability discrimination cause of action for failure to allege facts that Mr. Vermillion "was

15   competent to perform the essential functions of the job, with or without accommodations."  CCA argues

16   that the cause of action's mere allegation that Mr. Vermillion was terminated because he was disabled

17   is insufficient.

18        Mr. Vermillion argues that if there was a reasonable accommodation available to him and he was

19   able to perform essential functions of that modified position, he was able to perform "essential

20   functions" of his position.  Mr. Vermillion points to the complaint's allegations of: (1) denials of his

21   requests for a chair for shifts which required standing and assignment to shifts with no standing; and (2)

22   CCA's assignment of shifts requiring standing despite Mr. Vermillion's light duty status placed by his

23   physician. Mr. Vermillion contends that the complaint satisfactorily alleges that light duty was available

24   for him but CCA intentionally denied an accommodation to retaliate against Mr. Vermillion's filing a

25   workers' compensation claim.

26        Mr. Vermillion points to the complaint's allegation that he underwent a gastric bypass to lose

27   80 pounds to reduce foot pressure to increase his standing ability.  Mr. Vermillion claims that he is able

28   to perform essential functions with reasonable accommodation of a finite leave to recover after his

                                                    8

1   gastric bypass.  "Holding a job open for a disabled employee who needs time to recuperate or heal is in

2   itself a form of reasonable accommodation and may be all that is required where it appears likely that

3   the employee will be able to return to an existing position at some time in the foreseeable future."

4   *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263, 102 Cal.Rptr. 55 (2000).

5        The (fourth) disability discrimination cause of action simply alleges that CCA discriminated

6   against Mr. Vermillion "on the basis of his disability by terminating him because he suffered from his

7   foot condition."  CCA is correct that the cause of action lacks meaningful facts that Mr. Vermillion is

8   qualified to performed essential job functions, with or without an accommodation.  "[I]t is reasonable

9   to require a plaintiff who alleges a FEHA violation as a basis for recovery to prove the elements of a

10  claim for violation of the Act, including proving the element that the defendant impermissibly

11  discriminated because the plaintiff was able to do the job with or without reasonable accommodation."

12  *Green v. State of California*, 42 Cal.4th 254, 263, 165 P.2d 118 (2007).  Mr. Vermillion's references to

13  requests for a chair and assignments without standing and finite leave are unavailing.  Neither Mr.

14  Vermillion's complaint nor opposition papers point to specific positions which he was qualified to

15  perform, with or without accommodation.  The complaint merely hints that Mr. Vermillion could

16  perform if assigned shifts without extended standing or allowed to sit.  More is necessary to satisfy the

17  "qualified" element.  Nonetheless, Mr. Vermillion is granted leave to amend to attempt to cure

18  deficiencies as to his qualifications to perform the essential functions of the job, with or without

19  reasonable accommodations.

20                          **Failure To Accommodate Disability**

21        FEHA renders as an unlawful employment practice "[f]or an employer . . . to fail to make

22  reasonable accommodation for the known physical or mental disability of an applicant or employee."

23  Cal. Gov. Code, § 12940(m).  However, FEHA creates an accommodation exception:

24            This part does not prohibit an employer from . . . discharging an employee with
          a physical or mental disability, or subject an employer to any legal liability resulting from
25        . . . the discharge of an employee with a physical or mental disability, where the
          employee, because of his or her physical or mental disability, is unable to perform his or
26        her essential duties even with reasonable accommodations, or cannot perform those
          duties in a manner that would not endanger his or her health or safety or the health or
27        safety of others even with reasonable accommodations.

28  Cal. Gov. Code, § 12940(a)(1).

                                        9

The elements of a FEHA failure to accommodate claim are that plaintiff: (1) suffers from a disability covered by FEHA; and (2) is a qualified individual. *Jensen*, 85 Cal.App.4th at 256, 102 Cal.Rptr.2d 55. A "plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." *Jensen*, 85 Cal.App.4th at 256, 102 Cal.Rptr.2d 55. "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir. 2000).

Similar to the (fourth) disability discrimination cause of action, CCA attacks the (second) failure to accommodate cause of action for an absence of facts that Mr. Vermillion was able to perform the essential functions of his position with or without reasonable accommodations. Mr. Vermillion responds that "ability to perform the essential functions of his job must be measured by the requirements of the alternative positions that he sought. Defendant does not argue that Plaintiff could not perform these positions." Mr. Vermillion again argues that CAA should have given him finite leave for the gastric bypass to lose weight to relieve foot pressure.

The (second) failure to accommodate cause of action identifies Mr. Vermillion's "foot problem" as a FEHA disability. Other than that, the cause of action's only other substantive allegation is that CCA discriminated against Mr. Vermillion "on the basis of his disability by terminating him because he suffered from his foot condition." CCA correctly notes that the cause of action lacks meaningful facts that Mr. Vermillion is qualified to performed essential job functions, with or without an accommodation. The complaint merely hints that Mr. Vermillion could perform if assigned shifts without extended standing or allowed to sit. More is necessary to satisfy the "qualified" element. Nonetheless, Mr. Vermillion is granted leave to amend to attempt to cure deficiencies as to his qualifications to perform the essential functions of the job, with or without reasonable accommodations.

## Failure To Engage In Interactive Process

FEHA renders as an unlawful employment practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code, §

12940(n).  "The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation."  *Swonke v. Sprint, Inc.*, 327 F.Supp.2d 1128, 1137 (N.D. Cal. 2004).  Nonetheless, a court "cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile."  *Swonke*, 327 F.Supp.2d at 1137.  "The employer cannot be required to find a job for an employee when no such position could be created even hypothetically."  *Swonke*, 327 F.Supp.2d at 1138.  "An employee may file a civil action based on the employer's failure to engage in the interactive process."  *Claudio v. Regents of Univ. of Cal.*, 134 Cal.App.4th 224, 244, 35 Cal.Rptr.3d 837 (2005).

As with the other FEHA causes of action, CCA challenges the (third) failure to engage in inactive process cause of action an absence of facts that Mr. Vermillion was able to perform essential functions of his position, with or without reasonable accommodations.  Mr. Vermillion faults CCA's failure to offer him "modified duty, light duty, a clerical position or even assignment of duties he could perform while seated."  Mr. Vermillion claims he was able to perform at least modified duties.

The (third) failure to engage in interactive process cause of action merely alleges that Mr. Vermillion requested a reasonable accommodation to sit or to work shifts without excessive sitting and that CCA knew of Mr. Vermillion's disability and refused to engage in "a timely, good faith interactive process."  The cause of action fails to allege available accommodations to permit Mr. Vermillion to return to work.  Although Mr. Vermillion claims he was able to perform at least modified duties, he does not clearly allege as much.  Again, the complaint merely hints that Mr. Vermillion could perform if assigned shifts without extended standing or allowed to sit.  Nonetheless, Mr. Vermillion is granted leave to amend to attempt to cure deficiencies as to his qualifications to perform the essential functions of the job, with or without reasonable accommodations.

## CCA'S MOTION TO STRIKE

### F.R.Civ.P. 12(f) Standards

CCA seeks to strike complaint's punitive damages claims (paragraphs 19, 26, 33 and 39) and prayer in the absence of supporting facts and elements.

F.R.Civ.P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike may be granted if "it is clear that the matter to be

stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.*, 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527.

Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters. *Fantasy, Inc.*, 984 F.2d at 1527. "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996). With these standards in mind, this Court turns to the complaint's punitive damages claims.

### Punitive Damages

#### *Malice, Oppression Or Fraud*

CCA characterizes the complaint's punitive damages claims as "boiler plate allegations in an attempt to establish the requisite 'malice, fraud, or oppression.'" CCA notes the absence of allegations to describe its alleged malice, oppression, fraud or acts specifically intended to inflict injury to Mr. Vermillion. Mr. Vermillion responds that his complaint alleges sufficient facts for punitive damages

12

given that they may be awarded in actions for FEHA violations and wrongful termination.

California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code, § 3294(a).  Section 3294(c)(1)–(3) defines:

1.   "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

2.   "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

3.   "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294."  *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983).  "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice."  *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976).  Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged to support the allegation."  *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.  (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ."  *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Smith v. Superior Court*,

1    10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that

2    it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud

3    or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory

4    characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient

5    statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

6         Punitive damages are never awarded as a matter of right, are disfavored by the law, and should

7    be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific*

8    *National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

9         Without pertinent, convincing support, Mr. Vermillion doubts that California courts continue

10   to require specificity for punitive damages claims.  Mr. Vermillion appears to claim that merely alleging

11   wrongful termination to violate FEHA and public policy is sufficient.  As to the adequacy of the

12   complaint's punitive damages claims, Mr. Vermillion points to allegations that CCA was aware of Mr.

13   Vermillion's "disability" and "forced" him to work in violation of his physician's "request for light

14   duty."  Mr. Vermillion further notes that the complaint alleges CCA terminated Mr. Vermillion "in

15   retaliation for filing a workers' compensation claim."

16        The complaint's four causes of action repeat the conclusory allegation that CCA's conduct was

17   malicious, oppressive and despicable to entitle Mr. Vermillion to punitive damages.  The complaint

18   lacks specific allegations of CCA's acts which constitute malice, oppression or fraud.  The complaint

19   fails to alert CCA of alleged conduct to warrant punitive damages.  The complaint's punitive damages

20   allegations are conclusory at best.  Mr. Vermillion fails to demonstrate that his complaint alleges

21   ultimate facts of malice oppression or fraud to support punitive damages.  Despite the disfavor of

22   punitive damages, this Court grants Mr. Vermillion leave to amend to attempt to cure deficiencies as to

23   elements of malice, oppression or fraud to satisfy section 3294(a) requirements.

24                              ***Managing Agent***

25        CCA faults the punitive damages claims for failure to plead specifically CCA's "authorization,

26   ratification, or approval" of its employees' conduct to subject it to punitive damages.

27        Section 3294(b) addresses requirements to impose punitive damages against employers:

28             An employer shall not be liable for [punitive] damages . . . based upon acts of an

                                            14

employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.  With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud or malice must be on the part of an officer, director, or managing agent of the corporation.

Section 3294 requires proof of malice among corporate leaders: the "officer[s], director[s], or managing agent[s]." Cal. Civ. Code, § 3294(b).  As the California Court of Appeal explained:

This is the group whose intentions guide corporate conduct. By so confining liability, the statute avoids punishing the corporation for malice of low-level employees which does not reflect the corporate "state of mind" or the intentions of corporate leaders. This assures that punishment is imposed only if the corporation can be fairly viewed as guilty of the evil intent sought to be punished.

*Cruz v. HomeBase*, 83 Cal.App.4th 160, 166, 99 Cal.Rptr.2d 435 (2000).

"Managing agents" are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 573, 88 Cal.Rptr.2d 19 (1999).

An act of oppression, fraud or malice, by an officer, director or managing agent, is sufficient to impose liability on a corporate employer for punitive damages, without an additional showing of ratification by the employer.  Cal. Civ. Code, § 3294(b); *Agarwal v. Johnson*, 25 Cal.3d 932, 950, 160 Cal.Rptr. 141 (1979), *overruled on other grounds*, *White*, 21 Cal.4th 563 at 574, n. 4, 88 Cal.Rptr.2d 19; *Kelly-Zurian v. Wohl Shoe Co., Inc.*, 22 Cal.App.4th 397, 420, 27 Cal.Rptr.2d 457, 469 (1994).  The critical inquiry whether employees act in a managerial capacity is "the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 822-823, 169 Cal.Rptr. 691 (1979); *see Kelly-Zurian*, 22 Cal.App.4th at 420, 27 Cal.Rptr.2d at 470 (evidence that a supervisor had power to terminate and supervise employee's performance was insufficient to establish managing agent).

The California Supreme Court has explained:

We therefore conclude that in amending section 3294, subdivision (b), the Legislature intended that principal liability for punitive damages not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy.  Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents.  Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy

15

1

2       would not be considered managing agents even though they may have the ability to hire
        or fire other employees.  In order to demonstrate that an employee is a true managing
        agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would
3       have to show that the employee exercised substantial discretionary authority over
        significant aspects of a corporation's business.

4    *White*, 21 Cal.4th at 576-577, 88 Cal.Rptr.2d at 29.

5           Mr. Vermillion points to the "Warden" as the target managing agent and notes the complaint's

6    allegations that the Warden harassed Mr. Vermillion about his foot condition and decided to terminate

7    Mr. Vermillion "after sitting on an investigation of excessive charges for several months."  To cloak the

8    Warden with managing agent status, Mr. Vermillion notes the Warden manages a 2,300 bed federal

9    prison worth $110 million and which employs 150 people, 74 of whom are corrections officers.

10          The complaint fails to allege facts to satisfy section 3294 to impose punitive damages on CCA.

11   The complaint is devoid of allegations of CCA's advance knowledge, conscious disregard, authorization,

12   ratification or acts to impose punitive damages.  Despite Mr. Vermillion's claims in his opposition

13   papers, the complaint fails to point to conduct of officers or directors or to explain that identified

14   employees are managing agents who determine corporate policy or exercise authority over significant

15   aspects of CCA's business.  CCA correctly notes that the complaint merely alleges that the wrongdoers

16   were supervisors and failed to follow corporate policy.  Much more is needed to plead properly punitive

17   damages claims.  Nonetheless, this Court grants Mr. Vermillion leave to amend to attempt to satisfy

18   section 3294(b) requirements to impose punitive damages on CCA.

19                                    **CONCLUSION AND ORDER**

20          For the reasons discussed below, this Court:

21   1.      DENIES dismissal of the (first) wrongful termination in violation of public policy cause

22          of action;

23   2.      DISMISSES with leave to amend the (second) failure to accommodate cause of action,

24          (third) failure to engage in interactive process cause of action, and (fourth) disability

25          discrimination cause of action;

26   3.      STRIKES the complaint's paragraphs 19, 26, 33 and 39 and paragraph 4. of the

27          complaint's prayer seeking punitive damages;

28   4.      ORDERS Mr. Vermillion, no later than September 19, 2008, to: (1) file and serve a first

amended complaint to cure deficiencies of the (second) failure to accommodate cause of action, (third) failure to engage in interactive process cause of action, (fourth) disability discrimination cause of action, and punitive damages claims; or (2) file and serve notice that Mr. Vermillion drops his (second) failure to accommodate cause of action, (third) failure to engage in interactive process cause of action, (fourth) disability discrimination cause of action, and/or punitive damages claims;

5.   ORDERS CCA, no later than 10 court days after Mr. Vermillion files his first amended complaint or notice, to file and serve a responsive pleading to the first amended complaint or an answer to Mr. Vermillion's original complaint, as appropriate.

IT IS SO ORDERED.

**Dated:**   **August 28, 2008**                    **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE