IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE VERMILLION, | CASE NO. CV F 08-1069 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTIONS TO DISMISS AND TO STRIKE PORTIONS OF FIRST AMENDED COMPLAINT** |
| vs. | (Docs. 22, 23.) |
| CORRECTIONS CORPORATION OF AMERICA, | |
| Defendant. | |

## INTRODUCTION

Defendant Corrections Corporation of America ("CCA") seeks to dismiss plaintiff Jesse Vermillion's ("Mr. Vermillion's") California disability discrimination and failure to accommodate claims and to strike his punitive damages claims in the absence of sufficient allegations of facts and elements of the claims. Mr. Vermillion responds that he adequately pled his claims in that CCA was obliged to transfer him to a vacant existing position and that his termination reflects malice. This Court considered CCA's F.R.Civ.P.12(b)(6) and F.R.Civ.P. 12(f) motions on the record and VACATES the November 3, 2008 hearing, pursuant to Local Rule 78-230 (c) and (h).[1] For the reasons discussed below, this Court DENIES dismissal of Mr. Vermillion's California disability discrimination and failure to accommodate claims and STRIKES his punitive damages claims.

---

[1] CCA correctly notes that Mr. Vermillion failed to comply with Local Rule 78-230(c) to serve CCA timely with his opposition papers. Such untimely service further warrants vacating the hearing but not striking Mr. Vermillion's opposition papers.

1

# BACKGROUND[2]

## Mr. Vermillion's Foot Condition And Workers' Compensation Claim

Mr. Vermillion was a seven-year CCA employee and worked as a prison guard at the California City Corrections Center.[3] In March 2007, an inmate attacked Mr. Vermillion to injure Mr. Vermillion's elbow, back and shoulder. Mr. Vermillion claims that after he filed a workers' compensation claim, CCA branded him "a trouble maker and legal threat to the company."

In June 2007, Mr. Vermillion began to suffer extreme foot pain from constant standing on the job. Mr. Vermillion was unable to stand for more than a few minutes and used a chair when required to stand all day. Captain Clark[4] refused to allow Mr. Vermillion to sit and to assign Mr. Vermillion to shifts with no standing. On one occasion, Captain Clark told Mr. Vermillion over loudspeakers to remove his chair from a hallway.

Mr. Vermillion informed Captain Clark that Mr. Vermillion needed to file a workers' compensation claim if Captain Clark "refused to reasonably accommodate his foot condition." After Captain Clark told Mr. Vermillion that Mr. Vermillion would need to visit Mr. Vermillion's personal physician, Captain Clark allowed Mr. Vermillion to see a workers' compensation physician who placed Mr. Vermillion on light duty. CCA and Captain Clark continued to require Mr. Vermillion to stand "all day" and assigned Mr. Vermillion to shifts that required standing. The Warden[5] told Mr. Vermillion that Mr. Vermillion needed to stand all day.

Captain Clark and the Warden began to make "derogatory comments" about Mr. Vermillion's foot condition to insinuate that it was caused by his excessive weight. Captain Clark saw Mr. Vermillion sitting and said "so you're too heavy to do your job now." Mr. Vermillion underwent an August 6, 2007 gastric bypass, lost 80 pounds and "missed some work."

---

[2] The factual recitation is derived generally from Mr. Vermillion's first amended complaint ("FAC"), the target of CCA's challenges.

[3] CCA, a private corporation, apparently contracted with the federal government to provide corrections officer services for the California City Corrections Center.

[4] The FAC identifies an apparent CCA supervisor as merely "Captain Clark."

[5] The FAC identifies the apparent warden of the California City Corrections Center as merely "Warden."

**Mr. Vermillion's Termination**

On September 17, 2007, "shortly after" Mr. Vermillion returned from his gastric bypass, CCA terminated Mr. Vermillion's employment on grounds that on March 23, 2007, he had "used excessive force on an inmate and filed a false report regarding the incident." Mr. Vermillion attributes the inmate to making "a false charge of excessive force" after telling Mr. Vermillion that the inmate "was going to get him in trouble." When Mr. Vermillion asked why no investigation had been performed, the Warden told Mr. Vermillion that CCA had concluded an investigation months earlier but "wanted to wait to see what happened." Mr. Vermillion claims the Warden's comment reveals that the inmate incident was a "guise" to terminate Mr. Vermillion to retaliate for his filing a workers' compensation claim and because he was disabled.

**Mr. Vermillion's Claims**

The FAC alleges a tort termination cause of action and three causes of action for violations of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq., arising from Mr. Vermillion's "foot" disability. More specifically, the FAC alleges:

1. A (first) cause of action for wrongful termination in violation of public policy in that CCA terminated Mr. Vermillion "in retaliation for exercising rights to see a workers' compensation doctor";[6]

2. A (second) cause of action for failure to reasonably accommodate disability in that CCA refused Mr. Vermillion's request for shifts without excessive standing and to allow him to sit during excessive standing shifts;

3. A (third) cause of action for failure to engage in interactive process in that CCA fully knew of Mr. Vermillion's disability and refused "to engage in a timely, good faith interactive process" required by California Government Code section 12940(n); and

4. A (fourth) disability discrimination cause of action that CCA discriminated against Mr. Vermillion "on the basis of his disability by terminating him because he suffered from his foot condition."

---

[6] The sufficiency of the (first) tort termination cause of action is not at issue in that this Court's August 28, 2008 order denied its dismissal. However, CCA seeks to strike its punitive damages claim.

3

1    The FAC alleges that Mr. Vermillion has suffered physical pain, lost wages, humiliation and
2 emotional distress.  Each cause of action alleges that CCA's conduct "was fraudulent, oppressive,
3 malicious and despicable" to entitle Mr. Vermillion to punitive damages.  More specifically, the FAC
4 alleges that CCA's conduct was intentional and carried out with "willful and conscious disregard" for
5 Mr. Vermillion's FEHA rights and right not to be fired in violation of public policy.  The FAC further
6 alleges his termination and CCA's conduct was despicable to subject him to unjust hardship and
7 aggravation of his disability.

## CCA's MOTION TO DISMISS

### F.R.Civ.P. 12(b)(6) Standards

10   CCA seeks F.R.Civ.P. 12(b)(6) dismissal of the FAC's three FEHA causes of action in the
11 absence of facts that Mr. Vermillion "was able to perform any positions at CCA, with or without
12 accommodations."  A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the
13 pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before
14 the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The
15 issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer
16 evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan
17 v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is
18 proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts
19 alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.
20 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  F.R.Civ.P. 12(b)(6)
21 dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle
22 him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

23   In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most
24 favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine
25 whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty
26 Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is "free to ignore legal
27 conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in
28 the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th

Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). With these standards in mind, this Court addresses CCA's challenges to Mr. Vermillion's FEHA causes of action.

## Disability Discrimination

The FAC's (fourth) disability discrimination cause of action alleges that CCA's discrimination against Mr. Vermillion based on his foot problem violated FEHA. FEHA declares "as a public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability, mental disability, medical condition . . ." Cal. Gov. Code, § 12920. California Government Code section 12940(a) provides it is unlawful: "For an employer, because of . . . physical disability, mental disability, medical condition . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

Elements of a prima facie case of disability discrimination are that the plaintiff:

1. Suffers from a disability;
2. Is otherwise qualified to perform his/her job; and
3. Was subjected to adverse employment action because of the disability.

*Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 886, 58 Cal.Rptr.3d 729 (2007): *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802; 93 S.Ct. 1817 (1973); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785 (1988). Mr. Vermillion notes his burden to prove each element, including that "defendant impermissibly discriminated because plaintiff was unable to do the job with or without

reasonable accommodation."

### *Qualified To Perform*

CCA initially focuses on the second "qualified" element and characterizes it as "qualified to perform the essential functions of the job, with or without reasonable accommodations." *Le Bourgeois v. Fireplace Manufacturers, Inc.*, 68 Cal.App.4th 1049, 1058, n. 11, 80 Cal.Rptr.2d 660 (1998). "[T]o establish a prima facie case for discrimination based upon violation of the FEHA, the plaintiff must prove he was qualified for the position." *Quinn v. City of Los Angeles,* 84 Cal.App.4th 472, 480, 100 Cal.Rptr.2d 914 (2000).

FEHA "allows the employer to discharge an employee with a physical disability when that employee is unable to perform the essential duties of the job even with reasonable accommodation." *Green v. State of California*, 42 Cal.4th 254, 257, 64 Cal.Rptr.3d 390 (2007). FEHA "requires employees to prove that they are qualified individuals under the statute just as the federal ADA[7] requires." *Green*, 42 Cal.4th at 258, 64 Cal.Rptr.3d 390. To establish disability discrimination under FEHA, "the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." *Green*, 42 Cal.4th at 262, 64 Cal.Rptr.3d 390. FEHA and ADA "both limit their protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation." *Green*, 42 Cal.4th at 264, 64 Cal.Rptr.3d 390.

CCA criticizes the following allegations of the FAC's paragraph 15 and which address Mr. Vermillion's qualification to perform his job with reasonable accommodation:

1. "The essential functions of a prison guard position only require standing for long periods of time in certain assigned shifts, such as when guarding the mess hall and other areas where inmates were regularly situated";

2. "[O]ther assignments, including but not limited to, bus driving and operation of other motor vehicles were available to CCA into which Plaintiff could have been placed";

3. Mr. Vermillion "was qualified to drive buses and operate motor vehicles";

---

[7] The federal ADA is the Americans with Disabilities Act

6

1  4. Mr. Vermillion "was able to perform the essential functions of this position as his disability only impacted his ability to stand, not drive";

2  5. Mr. Vermillion "lost 80 lbs. a short time after his termination and therefore was able to stand for extended periods of time shortly thereafter";

3  6. A "finite leave, of a period less than 12 weeks, would also have been a reasonable accommodation and should have been extended";

4  7. "[O]ther clerical positions and positions that did not require standing were available at CCA when Plaintiff requested light duty and Plaintiff is unaware of the precise positions only because that information is in the custody and control of Defendant CCA"; and

5  8. Mr Vermillion "could perform the essential functions of these positions as his disability only prohibited his ability to stand for extended periods."

CCA challenges the FAC's failure to allege sufficient facts that Mr. Vermillion was qualified to perform essential functions of his position, with or without reasonable accommodations. CCA points out that the FAC alleges that Mr. Vermillion's disability, his foot problem, was "chronic," "limited major life activities, including his ability to walk, stand and work," "but only prohibited his ability to stand for extended periods." CCA notes that the FAC acknowledges that the prison guard position requires "standing for long periods of time in certain assigned shifts, such as when guarding the mess hall and other areas where inmates were regularly situated." Based on such allegations, CCA concludes that standing for long time periods is an "essential function" of Mr. Vermillion's prison guard position and as such, Mr. Vermillion was unable "to perform the essential functions of the prison guard position." CCA argues that the FAC's allegation, on information and belief, that Mr. Vermillion is qualified to perform "clerical positions and positions that did not require standing" are insufficient in the absence facts concerning the positions and their "essential job functions." CCA concludes that Mr. Vermillion "couches his discussion in terms of certain assignments he believes he is qualified for, rather than his qualifications for certain positions." (Underlining in original.)

Mr. Vermillion responds that he is qualified "because other positions existed into which he could have been transferred" and which required no standing for long periods. Mr. Vermillion claims that he was qualified to drive motor vehicles and points to the FAC's allegations of available driving positions

7

which Mr. Vermillion could perform and to which CCA was obliged to transfer him. Mr. Vermillion argues that CCA does not avoid its "affirmative duty" to transfer Mr. Vermillion due to his lack of detailed knowledge of CCA's operations and vacant positions at the time of his termination. Mr. Vermillion notes that he "merely requests the opportunity to complete discovery and inquire as to positions that might have been open to him."

As to reassignments, the California Court of Appeal has explained:

> Under the FEHA (and the ADA) an employer is relieved of the duty to reassign a disabled employee whose limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an "undue hardship" on its operations or if there is no vacant position for which the employee is qualified.

*Spitzer v. The Good Guys, Inc.*, 80 Cal.App.4th 1376, 1389, 96 Cal.Rptr.2d 236 (2000). The California Court of Appeal further noted that an employer is obliged "'to reassign a disabled employee if an already funded, vacant position at the same level exists.'" *Spitzer*, 80 Cal.App.4th at 1289, 96 Cal.Rptr.2d 236 (quoting *Megine v. Runyon*, 114 F.3d 415, 419 (3rd Cir. 1997).

Unlike Mr. Vermillion's original complaint, the FAC appears to rely on CCA's duty to attempt to reassign Mr. Vermillion, if there was an available vacant position. Such issue is a factual question which escapes resolution on CCA's F.R.Civ.P. 12(b)(6) motion. The FAC adequately references other available positions and Mr. Vermillion's ability to perform them. *See Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 227, 87 Cal.Rptr.2d 487 (1999) (employer reasonably accommodated disabled employee who could no longer perform job duties by offering alternative vacant position paying 50 percent of former pay without benefits). He is obliged to prove their existence and ability to perform them, again, issues not ripe for determination at this time. "[I]t is reasonable to require a plaintiff who alleges a FEHA violation as a basis for recovery to prove the elements of a claim for violation of the Act, including proving the element that the defendant impermissibly discriminated because the plaintiff was able to do the job with or without reasonable accommodation." *Green*, 42 Cal.4th at 263, 165 P.2d 118. At this pleading stage, this Court is not in a position to verify the factual issue raised by CCA that Mr. Vermillion refers merely to assignments of a certain position. CCA's criticisms of the FAC are insufficient to defeat Mr. Vermillion's disability discrimination claim at this time.

Moreover, the FAC's reference to a finite leave of absence bolsters Mr. Vermillion's FEHA

8

claims. "Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future." *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 263, 102 Cal.Rptr.2d 55 (2000). A "finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson,* 74 Cal.App.4th at 226, 87 Cal.Rptr.2d 487. The FAC makes adequate qualified to perform allegations. CCA's points regarding employer knowledge of disability are unavailing given the FAC's allegations regarding Mr. Vermillion's foot pain and requests to use a chair and to avoid standing and the comments attributed to Captain Clark and the Warden regarding Mr. Vermillion's workers' compensation claim and foot condition.

### *Adverse Employment Action*

CCA faults the FAC's failure to allege facts that Mr. Vermillion's termination was based on a disability. CCA notes that discriminatory intent is a "necessary element" in that a "plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *See Clark v. Claremont University Center*, 6 Cal.App.4th 639, 663, 8 Cal.Rptr.2d 151 (1992).

CCA notes that Mr. Vermillion's alleged adverse action, termination, arose after his return from gastric bypass surgery and that the FAC lacks facts that Mr. Vermillion was disabled or subject to medical restrictions on his return from gastric bypass surgery or at his termination. CCA points out the absence of allegations that after Mr. Vermillion's return from gastric bypass surgery, CCA knew of or was provided medical evidence of a need to accommodate Mr. Vermillion's medical restriction. "An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer." *Brundage*, 57 Cal.App.4th at 237, 66 Cal.Rptr.2d 830. To prove a disability discrimination claim, "a plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made." *Brundage*, 57 Cal.App.4th at 237-238, 66 Cal.Rptr.2d 830. CCA concludes that the FAC lacks necessary facts of a "causal link" that CCA terminated Mr. Vermillion based on a disability.

Mr. Vermillion responds that CCA "misunderstands" his allegations. Mr. Vermillion explains that he was not disabled by the gastric bypass, which "was intended to alleviate the cause of his foot problems, his weight." Mr. Vermillion notes that the FAC alleges CCA's awareness of his condition due to his requests to sit and need to file a workers' compensation claim.

Mr. Vermillion correctly notes that the FAC satisfies minimal discriminatory motive requirements. The FAC points to Mr. Vermillion's denied requests to use a chair, Captain Clark's criticisms of Mr. Vermillion and his requests, Mr. Vermillion's need to file a workers' compensation claim and placement on light duty, the Warden's retaliation, and delay to terminate Mr. Vermillion. The FAC sufficiently pleads that his termination was based on a discriminatory criterion illegal under FEHA.

## **Failure To Accommodate**

CCA faults the (second) failure to accommodate cause of action in the absence of allegations that Mr. Vermillion was able to perform essential functions of his position with or without reasonable accommodations.

FEHA renders as an unlawful employment practice "[f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov. Code, § 12940(m). However, FEHA creates an accommodation exception:

> This part does not prohibit an employer from . . . discharging an employee with a physical or mental disability, or subject an employer to any legal liability resulting from . . . the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.

Cal. Gov. Code, § 12940(a)(1).

The elements of a FEHA failure to accommodate claim are that plaintiff: (1) suffers from a disability covered by FEHA; and (2) is a qualified individual. *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 256, 102 Cal.Rptr.2d 55 (2000). A "plaintiff proves he or she is a qualified individual by establishing that he or she can perform the essential functions of the position to which reassignment is sought, rather than the essential functions of the existing position." *Jensen*, 85 Cal.App.4th at 256, 102 Cal.Rptr.2d 55. "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir.

2000).

As noted above, the FAC alleges meaningful facts that Mr. Vermillion is qualified to perform essential job functions with or without accommodation. The FAC adequately references other available positions and Mr. Vermillion's ability to perform them. Mr. Vermillion's reliance on CCA's potential reassignment duty is sufficient at this pleading stage.

## Failure To Engage In Interactive Process

As it does with Mr. Vermillion's other FEHA claims, CCA challenges the (third) failure to engage in interactive process cause of action for failure to allege facts that Mr. Vermillion was able to perform essential functions of his position with or without reasonable accommodation. Mr. Vermillion contends that CCA's alleged failure to seek reassignment defeats arguments of futility to engage in the interactive process

FEHA renders as an unlawful employment practice for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code, § 12940(n). "The interactive process is triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Swonke v. Sprint, Inc.*, 327 F.Supp.2d 1128, 1137 (N.D. Cal. 2004). Nonetheless, a court "cannot impose upon the employer an obligation to engage in a process that was guaranteed to be futile." *Swonke*, 327 F.Supp.2d at 1137. "The employer cannot be required to find a job for an employee when no such position could be created even hypothetically." *Swonke*, 327 F.Supp.2d at 1138. "An employee may file a civil action based on the employer's failure to engage in the interactive process." *Claudio v. Regents of Univ. of Cal.*, 134 Cal.App.4th 224, 244, 35 Cal.Rptr.3d 837 (2005).

Again, the FAC alleges meaningful facts that Mr. Vermillion is qualified to perform essential job functions with or without accommodation. The FAC adequately references other available positions and Mr. Vermillion's ability to perform them. Mr. Vermillion's reliance on CCA's potential reassignment duty is sufficient at this pleading stage.

///

# CCA'S MOTION TO STRIKE

## F.R.Civ.P. 12(f) Standards

CCA seeks to strike the FAC's punitive damages claims (paragraphs 21, 28, 35 and 41) and prayer in the absence of supporting facts, elements and allegations of wrongful conduct by a managing agent.

F.R.Civ.P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.,* 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527.

Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters. *Fantasy, Inc.*, 984 F.2d at 1527. "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996). With these

standards in mind, this Court turns to the FAC's punitive damages claims.

**Punitive Damages**

*Malice, Oppression Or Fraud*

CCA characterizes the FAC's punitive damages claims as "terse and conclusory statements." CCA notes the absence of allegations of acts of malice, oppression, fraud specifically intended to inflict injury to Mr. Vermillion. Mr. Vermillion responds that the FAC's allegations that the Warden terminated Mr. Vermillion and falsified a legitimate reason for termination are sufficient to satisfy oppression, fraud or malice requirements.

California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code, § 3294(a). Section 3294(c)(1)–(3) defines:

1. "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others";

2. "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights"; and

3. "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983). "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976). Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged to support the allegation." *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the California Court of Appeal explained punitive damages pleading:

13

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him. (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

The Warden is the target of the FAC's punitive damages claims in that the Warden "personally made the decision to terminate Plaintiff's employment . . . because Plaintiff filed for workers' compensation and because he viewed Plaintiff as disabled." The FAC's paragraph 16 continues that "the Warden falsified a pretext for the termination, claiming the old and stale report that excessive force required a swift and immediate termination which was necessary for the safety of the prison."

The FAC's four causes of action repeat the allegation that CCA's conduct "was fraudulent, oppressive, malicious and despicable" to entitle Mr. Vermillion to punitive damages. In an apparent response to this Court's August 28, 2008 order for greater specifically, the FAC alleges that CCA's conduct was intentional and carried out with "willful and conscious disregard" for Mr. Vermillion's FEHA rights and right not to be fired in violation of public policy. The FAC further alleges his

termination and CCA's conduct was despicable to subject him to unjust hardship and aggravation of his disability.

The gist of Mr. Vermillion's punitive damages claims is that the Warden terminated Mr. Vermillion based on disability and belatedly falsified the excessive force incident as a pretext for termination. Such alleged conduct demonstrates intent to injure Mr. Vermillion in willful and conscious disregard of his workers' compensation and FEHA rights. On its face, the FAC satisfies the elements for punitive damages. Proof is another matter.

### *Managing Agent*

CCA faults the punitive damages claims for failure to allege "ratification or authorization by any [CCA] officers, directors, or managing agents" to subject it to punitive damages.

Section 3294(b) addresses requirements to impose punitive damages against employers:

> An employer shall not be liable for [punitive] damages . . . based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud or malice must be on the part of an officer, director, or managing agent of the corporation.

Section 3294 requires proof of wrongful conduct among corporate leaders: the "officer[s], director[s], or managing agent[s]." Cal. Civ. Code, § 3294(b); *Cruz v. HomeBase*, 83 Cal.App.4th 160, 166, 99 Cal.Rptr.2d 435 (2000). As the California Court of Appeal explained:

> This is the group whose intentions guide corporate conduct. By so confining liability, the statute avoids punishing the corporation for malice of low-level employees which does not reflect the corporate "state of mind" or the intentions of corporate leaders. This assures that punishment is imposed only if the corporation can be fairly viewed as guilty of the evil intent sought to be punished.

*Cruz*, 83 Cal.App.4th at 166, 99 Cal.Rptr.2d 435.

"Managing agents" are employees who "exercise[] substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal.4th 563, 573, 88 Cal.Rptr.2d 19 (1999).

An act of oppression, fraud or malice, by an officer, director or managing agent, is sufficient to impose liability on a corporate employer for punitive damages, without an additional showing of

15

ratification by the employer. Cal. Civ. Code, § 3294(b); *Agarwal v. Johnson*, 25 Cal.3d 932, 950, 160 Cal.Rptr. 141 (1979), *overruled on other grounds*, *White*, 21 Cal.4th 563 at 574, n. 4, 88 Cal.Rptr.2d 19; *Kelly-Zurian v. Wohl Shoe Co., Inc.*, 22 Cal.App.4th 397, 420, 27 Cal.Rptr.2d 457, 469 (1994). The critical inquiry whether employees act in a managerial capacity is "the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 822-823, 169 Cal.Rptr. 691 (1979); *see Kelly-Zurian*, 22 Cal.App.4th at 420, 27 Cal.Rptr.2d at 470 (evidence that a supervisor had power to terminate and supervise employee's performance was insufficient to establish managing agent).

The California Supreme Court has explained:

> We therefore conclude that in amending section 3294, subdivision (b), the Legislature intended that principal liability for punitive damages not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Thus, supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees. In order to demonstrate that an employee is a true managing agent under section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business.

*White*, 21 Cal.4th at 576-577, 88 Cal.Rptr.2d at 29; *see Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403, 1437, 56 Cal.Rptr.3d 501 (2007) (determination whether a supervisor is a "managing agent" does not hinge on their "level" in the corporate hierarchy in that the critical inquiry is the degree of discretion the employees possess to make decisions that will ultimately determine corporate policy).

To attempt to cloak the Warden with managing agent status, the FAC alleges that:

1. "The Warden is personally responsible for overseeing the prison, with 2,304 beds that employed approximately 150 employees during Plaintiff's employment";

2. "The Warden was responsible for the oversight of all prison employees"; and

3. "The prison itself cost $110 million to build and the contract with the Federal Government worth $529 million at the end of ten years."

Mr. Vermillion claims that the FAC's allegations demonstrate that "CCA had delegated the responsibility for managing the California City Correctional Center to the Warden" in that he had

authority to hire and fire and "complete control of the prison." CCA responds that the Warden's overseer responsibilities at the California City prison do not render him a managing agent in that the Warden was "in charge" of only one of many CCA facilities and the FAC lacks facts that the Warden "guided or determined corporate policies."

Although the FAC may allege facts to satisfy section 3294(a) and (c), it fails to allege facts to satisfy section 3294(b). The FAC is devoid of allegations of CCA's advance knowledge, conscious disregard, authorization, ratification or acts to impose punitive damages based on managing agent conduct. The FAC fails to point to conduct of officers or directors or to allege sufficient facts that identified employees, including the Warden, are managing agents who determine corporate policy or exercise authority over significant aspects of CCA's business. The Warden's supervisory status and power to hire and fire employees is insufficient to transform him into a managing agent in the absence of meaningful facts of his discretionary authority over ultimate corporate decisions. The FAC merely alleges that the Warden is the prison's highest ranking supervisor. The FAC fails to link the Warden's authority to overall corporate policy. Mere isolation on the Warden's authority at the California City facility independent of CCA's global operations is insufficient.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES F.R.Civ.P. 12(b)(6) dismissal of Mr. Vermillion's FEHA claims (the FAC's second, third and fourth causes of action); and
2. STRIKES the FAC's paragraphs 21, 28, 35 and 41 and punitive damages prayer in the absence of sufficient allegations of requisite conduct by a managing agent.

IT IS SO ORDERED.

**Dated:   October 29, 2008**                    **/s/ Lawrence J. O'Neill**
                                                  UNITED STATES DISTRICT JUDGE